# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                           No. CR 12-0128 JB

RAMON GONZALEZ, SR.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Appeal from the Magistrate's Detention Order [Doc. 101], filed February 10, 2012 (Doc. 117)("Notice of Appeal"). The Court held a detention hearing on February 24, 2012. The primary issues are: (i) whether Plaintiff United States of America has proven by a preponderance of the evidence that Defendant Ramon Gonzalez, Sr. is a flight risk, and that no condition or combination of conditions would reduce that risk to an acceptable level; and (ii) whether the United States has proven by clear-and-convincing evidence that Gonzalez is a danger to the community, and that no condition or combination of conditions would reduce that danger to an acceptable level. The Court will affirm the Detention Order Pending Trial, filed February 3, 2012 (Doc. 101)("Detention Order"), issued by the Honorable Robert H. Scott, United States Magistrate Judge, which concluded that Gonzalez is a flight risk and a danger to the community, because the Court believes that no condition or combination of conditions would reasonably assure his appearance or the safety of the community.

## FACTUAL BACKGROUND

Gonzalez was born in Santa Clara, Chihuahua, Mexico in 1966. <u>See</u> Updated Pretrial Services Report at 1, disclosed February 3, 2012 ("Report"). He received resident alien status on

November 27, 1990.  <u>See</u> Report at 1.  Gonzalez reported that he has resided at his current address in Edgewood, New Mexico since approximately 1996.  <u>See</u> Report at 1.  He also spends time at another residence located in Albuquerque, New Mexico where his son lives.  <u>See</u> Report at 1.  Gonzalez lived in Mexico for approximately sixteen years from the time of his birth to when he left Mexico for California in 1982.  Report at 2.  Gonzalez' mother and his six siblings live in the Edgewood and Albuquerque areas.  <u>See</u> Report at 2.  Gonzalez has been married since 1984 and has two children -- a son and a daughter.  <u>See</u> Report at 2.

Gonzalez completed six years of formal education while living in Mexico.  <u>See</u> Report at 2.  Gonzalez "reported that he has earned a living as a self-employed race horse owner/trainer since about 1986."  Report at 2.  Gonzalez declined to discuss his financial situation with pretrial services.  <u>See</u> Report at 2.  Gonzalez has faced four charges for driving while intoxicated during a period from 1987 to 2010, but was acquitted for the charges he faced in 2010.  <u>See</u> Report at 4-5.  Gonzalez failed to appear at proceedings related to a 1996 charge for driving while intoxicated in Arizona, at which time a warrant for his arrest was issued.  <u>See</u> Report at 4.  Gonzalez faces pending charges for possession of marijuana (less than 2,000 pounds but more than 50 pounds) and possession of cocaine in El Paso, Texas, that arise out of some facts that give rise to the federal charges in this case.  <u>See</u> Report at 5.  "Law enforcement agents advise that" Gonzalez "is associated with the Sinaloa Drug Trafficking organization."  Report at 5.  Gonzalez' wife reported that he has recently cut down on drinking, but was unaware that he was arrested for driving while intoxicated in 2010.  <u>See</u> Report at 2.

In support of the arrest warrants in this case, Drug Enforcement Administration ("DEA") agent Gerald P. Maestas asserted that co-Defendant Homero Varela leads an Albuquerque-based drug trafficking organization.  <u>See</u> Affidavit of Gerald P. Maestas ¶ 2, at 1 (executed January 25,

2012), filed February 11, 2012 (Doc. 118-1)("Maestas Aff."). "[T]he Sinaloa Drug Cartel . . . is one of numerous, highly-organized and dangerous criminal organizations in the Republic of Mexico responsible for the importation of large quantities of controlled substances into the United States." Maestas Aff. ¶ 2, at 1. Maestas concludes, based on his investigation, that Gonzalez "is a smuggler/facilitator of drugs from Mexican sources of supply to Varela, and also . . . a money smuggler/facilitator to the [sources of supply] in Mexico for Varela." Maestas Aff. ¶ 51, at 24. Maestas asserts that Gonzalez "is believed to have been very active and successful as a regional drug trafficker in and about Albuquerque for many years." Maestas Aff. ¶ 51, at 24. Varela allegedly has significant connections to the Sinaloa Mexican drug cartel, including powerful leaders within this cartel such as "Jose Antonio Torres-Marrufo, who is well known to federal law enforcement as the Sinaloa Cartel's 'Hit Team' leader," because "he manages numerous assassination squads in the on-going war between the Sinaloa Cartel and the Juarez Cartel." Maestas Aff. ¶ 2, at 1-2.

On November 10, 2011, a member of the El Paso Sheriff's Department allegedly conducted a stop of Gonzalez' vehicle. See Maestas Aff. ¶ 42, at 21. Gonzalez "was traveling in his newer, white Dodge Ram 350 truck pulling a horse trailer." Maestas Aff. ¶ 42, at 21. During the stop, Gonzalez allegedly permitted the search of his vehicle. See Maestas Aff. ¶ 43, at 21. A K-9 allegedly "alerted to the rear portion of the trailer." Maestas Aff. ¶ 43, at 21. The officer allegedly located a large amount of marijuana and cocaine, specifically "244 gross kilograms of marijuana (approximately 500 pounds) in cardboard boxes in the trailer and 26 kilograms of cocaine in a duffle bag." Maestas Aff. ¶ 44, at 21. Before this event, DEA agents allegedly intercepted numerous telephone calls in which Gonzalez participated. See Maestas Aff. ¶¶ 45-46, at 21-22. The telephone calls allegedly included discussion of cocaine transactions in which Gonzales was supposed to participate. See Maestas Aff. ¶¶ 45-46, at 21-22. On a separate occasion, law enforcement officials

allegedly executed a search warrant at a storage unit, and "located Gonzalez, Sr.'s jacket and residue from marijuana."  Maestas Aff. ¶ 47, at 22.  Gonzalez was allegedly involved in a telephone conversation with Varela where the two men discussed the transportation of forty-five kilograms of cocaine.  See Maestas Aff. ¶¶ 53-54, at 24-25.

## PROCEDURAL BACKGROUND

A federal grand jury handed down a twenty-nine count indictment on January 25, 2012 which contains charges against fifteen co-Defendants.  See Indictment (Doc. 2).  Gonzalez is charged with the following Counts: (i) Count 1 - conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; (ii) Count 6 - money laundering in violation of 18 U.S.C. § 1957; and (iii) Counts 16 through 17 - use of a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b).  See Indictment at 1, 3, 8-9.  The United States seeks forfeiture of "at least $15,000,000 in U.S. currency" from the co-Defendants.  Indictment at 11.

On February 3, 2012, pretrial services issued its Report regarding the appropriateness of pretrial release.  It recommended pretrial detention based on Gonzalez' risk of flight for the following reasons: (i) prior failures to appear for court; (ii) substance abuse and/or addiction; (iii) ties to Mexico; and (iv) his immigration status, which would make him deportable upon conviction.  See Report at 3.  It recommended pretrial detention based on Gonzalez' danger to the community for the following reasons: (i) the nature of the alleged offense; (ii) his arrest and conviction history; (iii) his ties to Mexico; (iv) other pending felony drug trafficking charges he faces; and (v) his history of involvement and association with criminal or delinquent gangs.  See Report at 3.  On February 3, 2012, Judge Scott held a detention hearing.  See Clerk's Minutes of Hearing Hondo Courtroom at 1, filed February 3, 2012 (Doc. 100).  Judge Scott entered a Detention Order on February 3, 2012, detaining Gonzalez.  See Detention Order at 1-2.  Judge Scott

determined that: (i) there is a serious risk that Gonzalez would not appear; and (ii) there is a serious risk that Gonzalez will endanger the safety of another person or the community.  See Detention Order at 1-2.

On February 10, 2012, Gonzalez filed his Notice of Appeal.  He asks the Court to vacate Judge Scott's Detention Order and "to release him on the most restrictive conditions possible, with electronic monitoring and home confinement."  Notice of Appeal at 1-2.  He asserts that he "has been out on bail since November and has not attempted to flee the community."  Notice of Appeal at 1.  He contends that he "has strong ties to the community and an obvious interest in defending himself against these charges."  Notice of Appeal at 1.  He notes that he "understands that flight would be futile."  Notice of Appeal at 1.

On February 11, 2012, the United States filed its United States' Brief in Support of Motion for Pre-Trial Detention.  See Doc. 118 ("Brief in Support of Detention").  The United States seeks Gonzalez' continued pretrial detention.  See Brief in Support of Detention at 1.  It notes that there is a presumption of detention against Gonzalez.  See Brief in Support of Detention at 1.  The United States asserts that, notwithstanding Gonzalez' agreement to restrictive conditions, he remains individually and collectively a danger to other persons and the community.  See Brief in Support of Detention at 2.  It also contends that Gonzalez poses a risk of flight.  See Brief in Support of Detention at 2.  The United States argues that "[t]he presumption reflects Congress' findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade."  Brief in Support of Detention at 3 (quoting United States v. Moreno, 30 F.3d 127, 1994 WL 390091, at *2 (1st Cir. 1994)(unpublished table decision)).  The United States notes that, even if Gonzalez successfully rebuts the presumption of detention, the Court may still consider the evidentiary weight of that presumption depending "on

how closely defendant's case resembles the congressional paradigm." Brief in Support of Detention at 3 (quoting United States v. Moreno, 1994 WL 390091, at *2).  It notes that "[d]uring the investigation DEA agents determined that Gonzalez, Sr., was in the sole personal possession (in his horse trailer) of approximately 26 kilograms of cocaine and 500 pounds of marijuana."  Brief in Support of Detention at 5.  It contends that his "personal possession of 26 kilograms of cocaine and 500 pounds of marijuana" demonstrate "a degree of sophistication and dangerousness that cannot be ignored."  Brief in Support of Detention at 6.

At the detention hearing on February 24, 2012, Gonzalez noted that officers have never seized any firearms in his possession.  See Transcript of Hearing at 3:8-18 (taken February 24, 2012)(Kelley)("Tr.").[1]  He asserted that, once the contents of the substance seized at his wife's ranch receive a chemical evaluation, the evaluation will reveal that the seized substances are therapeutic medication for racehorses as opposed to cocaine.  See Tr. at 3:8-18 (Kelley).  Gonzalez clarified that he is not a naturalized citizen.  See Tr. at 4:4-15 (Court, Kelley).  He noted that he has been to Mexico only one time in the last five or six years.  See Tr. at 4:5-15 (Kelley).  He asserted that he has successfully been on pretrial release for the pending charges related to his alleged drug transportation in El Paso.  See Tr. at 4:16-5:6 (Kelley).  Gonzalez then provided tax returns for the period from 2007 to 2010 to substantiate that he has received significant income each year from his racehorse business.  See Tr. at 5:15-20 (Kelley); Ramon Gonzalez, Sr.'s Tax Returns (2007 through 2010)(Defendant's Exhibit A)("Tax Returns").  Relying on a comparative market analysis that a real estate firm performed, Gonzalez asserted that the value of his family's ranch is approximately $900,000.00.  See Tr. at 6:25-7:14 (Kelley); Comparative Market Analysis at 2 (Defendant's Exhibit

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

B).  He asserted that his wife is willing to pledge this property as security for his appearance in this case.  See Tr. at 7:15-23 (Kelley).

Gonzalez conceded that a presumption of detention applies to his case.  See Tr. at 8:4-13 (Kelley).  He argued that his circumstances are different from those of Varela, because Varela faced charges relating to multiple drug transactions.  See Tr. at 8:4-13 (Kelley).  Gonzalez asserted that home confinement in Edgewood and electronic monitoring are an adequate alternative to pretrial detention.  See Tr. at 8:23-9:13 (Kelley, Court).  Gonzalez acknowledged that he has interacted with Varela in relation to his horse business.  See Tr. at 9:19-25 (Court, Kelley).  Gonzalez emphasized that he has no family ties to Mexico and has lived here in the United States for many years.  See Tr. at 10:4-15 (Kelley).  He argued that his tax returns indicate that he has a legitimate source of income.  See Tr. at 10:16-18 (Kelley).  Gonzalez' wife then testified that: (i) she would report her husband for any violations of pretrial release; (ii) she would put up her ranch as security for her husband's release; and (iii) she understands that she would forfeit the ranch if he did not appear.  See Tr. at 12:1-16 (Kelley, Mrs. Gonzalez).[2]  Gonzalez noted that it would be difficult to interact with his attorney if he were detained, which he asserted is a significant burden given the case's complexity.  See Tr. at 13:25-14:13 (Kelley).  Gonzalez noted that some of his property has already been seized, including all the vehicles his family owns.  See Tr. at 13:17-25 (Kelley).  He asserted that he did not tell his wife about his 2010 arrest for driving while intoxicated, likely because he was embarrassed about the matter, and because he was ultimately not convicted.  See Tr. at 15:3-14 (Court, Kelley).  When asked about how much Gonzalez drinks, Gonzalez' wife testified that he likes to drink beer "like every Mexican."  Tr. at 16:16-19 (Mrs. Gonzalez).

---

[2]Gonzalez and his wife both required some assistance from Spanish interpreters.

The United States emphasized that Gonzalez was involved in transporting approximately 500 pounds of marijuana and twenty-six kilograms of cocaine when arrested in El Paso. See Tr. at 18:25-19:8 (Swainston). The United States asserted that it is not relying on, for purposes of detention, any drugs found at Gonzalez' ranch. See Tr. at 19:9-19 (Court, Swainston). The United States noted that Gonzalez signed the contract for the storage unit where the large amount of marijuana and cocaine was located before officers found those drugs in Gonzalez' horse trailer. See Tr. at 20:14-21:8 (Swainston). The United States estimated that Gonzalez' applicable sentencing guideline range would be 235 to 293 months based on the large drug seizure in El Paso. See Tr. at 24:3-21 (Swainston). The United States asserted that the district attorney's office in El Paso has stated that it would dismiss the charges against Gonzalez in El Paso when the charges in this case relating to that conduct proceed. See Tr. at 25:5-16 (Swainston). The Court inquired what the United States makes of Gonzalez not fleeing while on pretrial release in El Paso. See Tr. at 25:17-19 (Court). The United States represented that Gonzalez is sophisticated enough to understand that federal charges are more significant than state charges and that he now has more incentive to flee the country. See Tr. at 25:20-26:6 (Swainston). It also noted that much of Gonzalez' property is now subject to forfeiture as a result of the pending charges. See Tr. at 26:6-27:5 (Swainston). The United States asserted that it has evidence that Gonzalez was in contact with the Varela organization's Mexican source of supply. See Tr. at 35:14-23 (Swainston). The United States noted that, if Gonzalez is convicted, he will be deported to Mexico. See Tr. at 35:24-36:1 (Swainston). The United States asserted that Gonzalez' wife and his children would not be able to control Gonzalez if he were released on pretrial release. See Tr. at 36:12-18 (Swainston). The United States noted that the proposed location where Gonzalez would stay if under home confinement, a ranch, is located in a remote location that would make it more difficult than normal for law enforcement

to respond if Gonzalez chooses to flee.  See Tr. at 37:1-10 (Swainston).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 to 3150, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003).  "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g) **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including --
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption can arise that the defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F.App'x 272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).  18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. § 3142(e)(3)(A).  The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  Accord United States v. Holguin, 971 F.Supp.2d 1082,

1088 (D.N.M. 2011)(Browning, J.).

To determine whether the defendant has rebutted the presumption of detention, a court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would be posed by release.  See 18 U.S.C. § 3142(g).  Should the defendant satisfy his or her burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community.  See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  Notably, however, even if the defendant meets her burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes, 254 F.3d at 436.

## ANALYSIS

There is a presumption, based on the nature of the charges in the Indictment, that Gonzalez is a flight risk, as well as a danger to the community and to others.  In the face of that presumption, Gonzalez has successfully met his burden of production to show evidence that he is not a flight risk or danger to the community.  The Court concludes, however, that the United States has established: (i) by a preponderance of the evidence that Gonzalez is a flight risk; and (ii) by clear-and-convincing evidence that Gonzalez is a danger to the community and others.  The Court believes that there is no condition or combination of restrictions that would reasonably assure his appearance or the safety

of the community.

## I.       THERE IS A PRESUMPTION OF DETENTION.

The parties do not dispute that a presumption of detention applies under 18 U.S.C. § 3142(e). See Tr. at 8:4-13 (Kelley).  The charges Gonzalez faces in Count 1, conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), under the conspiracy statute contained in 21 U.S.C. § 846,[3] trigger a presumption under 18 U.S.C. § 3142(e)(3)(A). See Indictment at 1-2.  Gonzalez faces a minimum of ten-years imprisonment from these charges based on the alleged amount of drugs, see 21 U.S.C. § 841(b)(1)(A) ("[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."), and 18 U.S.C. § 3142(e)(3)(A) provides a presumption of detention for this drug offense when "a maximum term of imprisonment of ten years or more is prescribed,"  18 U.S.C. § 3142(e)(3)(A).  Thus, a presumption of detention applies.

## II.      THE COURT CONCLUDES THAT GONZALEZ IS A FLIGHT RISK AND A DANGER TO THE COMMUNITY.

The Court concludes that Gonzalez should be detained pending trial.  The Court concludes that Gonzalez has met his burden of production in the face of the statutory presumption favoring detention.  See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced.").  While Gonzalez has met his burden of production in response to the presumption given the restrictive conditions he has proposed as well as his ties to the community, the presumption of detention "remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at

---

[3]18 U.S.C. § 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  18 U.S.C. § 846.

1355 (citation omitted).  The Court further concludes that the United States has shown, by clear-and-convincing evidence, that Gonzalez presents a danger to the community, and, by a preponderance of the evidence, that he presents a risk of flight.  See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  The Court also concludes that no condition or combination of conditions will reduce to an acceptable level the risk of Gonzalez' flight or his danger to the community.

The United States has alleged that Gonzalez was involved in a major drug transaction, involving approximately 244 kilograms of marijuana and approximately twenty-six kilograms of cocaine.  There is significant evidence indicating that Gonzalez has strong ties to Varela, the alleged leader of the drug trafficking organization that is the subject of this case.  See Memorandum Opinion and Order at 14, filed February 21, 2012 (Doc. 140)("MOO").  Varela allegedly has significant ties to the Sinaloa Cartel.  Federal agents also report that Gonzalez himself has connections to the Sinaloa Cartel.  See Report at 5.  The grand jury issued an Indictment charging Gonzalez with the following Counts: (i) Count 1 - conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; (ii) Count 6 - money laundering in violation of 18 U.S.C. § 1957; and (iii) Counts 16 through 17 - use of a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b).  See Indictment at 1, 3, 8-9.  The United States seeks forfeiture of "at least $15,000,000 in U.S. currency" from the co-Defendants.  Indictment at 11.  Based on the contents of the Maestas Affidavit, the scope and scale of this drug trafficking organization is significant, and more substantial than the majority of drug crimes which the Court handles.

While Gonzalez' close family members live in Bernalillo County or the surrounding area, Gonzalez lived in Mexico for approximately sixteen years.  He is not a United States citizen, but is

a resident alien.  He will be deportable if convicted of the charges against him.  Thus, the consequences of fleeing to Mexico would not seem as significant to him given that he may be deported to Mexico if convicted.  New Mexico is also a State that runs along the Mexican border, thereby increasing the risk of flight to Mexico and decreasing the ability of law enforcement officers to timely respond to a defendant's flight.  While the Court believes it could impose conditions that would at some level reduce the risk of Gonzalez' flight or danger to the community, it is not convinced that it could impose conditions that would reasonably assure his appearance or reasonably assure that he will not be a danger to the community if released.

### A.    GONZALEZ IS A FLIGHT RISK.

The Court finds, by the preponderance of the evidence, that Gonzalez is a flight risk.  He faces charges that carry substantial sentences, including significant mandatory minimums, because he allegedly transported approximately 244 kilograms of marijuana and approximately twenty-six kilograms of cocaine.  The United States has estimated that his potential guideline imprisonment range would be 235 to 293 months based on this large drug seizure.  See Tr. at 24:3-21 (Swainston). The United States has presented, through the Maestas Affidavit and the probable cause determination underlying the grand jury's Indictment, weighty evidence of Gonzalez' guilt.  The allegations in the case involve conduct that is tied to Mexico, including the involvement of the Sinaloa Cartel.  While Gonzalez has significant ties to the Albuquerque and Edgewood areas, he spent sixteen years in Mexico and is not a citizen of the United States -- thus giving him a greater incentive to flee.  He also already has pending charges against him in El Paso, which gives him additional incentive to flee the country or the State.  Because of these considerations, the Court finds by a preponderance of the evidence that Gonzalez is a flight risk.

### 1.    The Nature and Circumstances of the Crimes Charged Demonstrate Gonzalez Is a Flight Risk.

The crimes with which Gonzalez is charged carry substantial penalties. For example, the conspiracy charge he faces in Count 1 carries a statutory minimum of ten-years imprisonment and a maximum sentence of life imprisonment. See 21 U.S.C. § 841(b)(1)(A) ("[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."). The United States has estimated that his potential guideline imprisonment range would be 235 to 293 months based on this large drug seizure. See Tr. at 24:3-21 (Swainston). Additionally, there are some substantial monetary forfeiture issues in the case with the United States seeking $15,000,000 in forfeiture proceedings. The United States has represented that much of Gonzalez' property would be subject to forfeiture. The pending charges against Gonzalez in El Paso further weigh in favor of a conclusion that Gonzalez faces serious consequences as a result of his alleged conduct. The Court concludes that this factor weighs in favor of detention.

### 2.    The Weight of the United States' Evidence Against Gonzalez Shows He Is a Flight Risk.

The Maestas Affidavit demonstrates that "the weight of the evidence offered in support of [the charges against Gonzalez is] significant," giving him many reasons to flee New Mexico or the United States if he is released pending trial. United States v. Cisneros, 328 F.3d at 618. The Maestas Affidavit indicates that the preliminary phases of the investigation into Varela's alleged drug trafficking organization began as early as 2009. See Maestas Aff. ¶ 30, at 16 ("In 2009, agents of the DEA's Albuquerque District Office received information regarding the drug trafficking activities of Homero Varela."). Several confidential informants provided information related to this investigation. See Maestas Aff. ¶ 31, at 17. One confidential informant "positively identified" Gonzalez through his "New Mexico driver's license photograph[]." Maestas Aff. ¶ 31, at 17.

Federal agents allegedly intercepted telephone calls between Gonzalez and Varela regarding drug trafficking, including discussions of drug transactions involving approximately forty-five kilograms of cocaine.  See Maestas Aff. ¶¶ 53-54, at 24-25.  State officials in El Paso allegedly searched Gonzalez' horse trailer and found 244 kilograms of marijuana and approximately twenty-six kilograms of cocaine.  See Maestas Aff. ¶¶ 42-44, at 21.  The proffered evidence indicates that the United States' case against Gonzalez is strong, making potential convictions and imprisonment a real possibility for him.  Thus, given the weight of the evidence against Gonzalez, this factor weighs in favor of detention.

### 3.   Gonzalez' History and Circumstances Show He Is a Flight Risk.

Gonzalez' history and characteristics cut both ways, but offer further support for finding that he is a flight risk.  Some of his characteristics demonstrate ties to the community.  Gonzalez has many family members in the Albuquerque and Edgewood area, including his mother and several siblings.  He operates a horse business here in New Mexico.  Excluding the charges he currently faces in El Paso that relate to the same underlying conduct as the current charges, he has no criminal history related to narcotics trafficking.  He appears to have a large amount of legitimate income from his horse business, although he faces significant forfeiture of his assets based on the charges against him.  He also did not flee during the period of time he faced charges in El Paso related to the incident where state officials allegedly seized a large amount of marijuana and cocaine from his horse trailer.

On the other hand, Gonzalez lived in Mexico for approximately sixteen years, which indicates that flight there would be a potentially viable option for him in comparison to a defendant who had never lived in Mexico.  See United States v. Armstrong, 397 F.App'x 466, 468 (10th Cir. 2010)(unpublished)(taking into account ties to Mexico when evaluating risk of flight).  As a resident

-16-

alien, Gonzalez would also have less incentive to stay in the country than a United States citizen, because he would lose his legal status here if convicted. That situation decreases the consequences to Gonzalez if he flees the country. Given Gonzalez' significant reported income, it appears he has the financial resources to travel to Mexico if he chose to flee there. See United States v. Cisneros, 328 F.3d at 618 (noting that it is a relevant consideration that the defendant had "the resources available to her to abscond to Mexico should she choose to do so"). It does not necessarily appear that Gonzalez' wife would be an adequate custodian either. She was not familiar with his recent driving-while-intoxicated charge, indicating that he would be able to keep information from her somewhat easily. Gonzalez appears to have significant financial autonomy and power within the alleged drug trafficking organization, indicating that he is a powerful figure that may be difficult to control.

In sum, by a preponderance of the evidence, Gonzalez is a flight risk given the serious penalties he faces, the strength of the United States' case, and his ties to Mexico. Notably, Gonzalez was not forthcoming about his financial information with pretrial services, although he provided his tax returns to the Court. Gonzalez has significant reason to abscond and avoid incarceration. Additionally, while he successfully met his burden of production in the face of the presumption of detention, the Court believes that presumption remains a relevant factor and that it weighs in favor of detention. See, e.g., United States v. Moreno, 1994 WL 390091, at *2 ("The presumption reflects Congress' findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade."). The Court recognizes that Gonzalez did not flee the country when he faced state charges in El Paso. A federal prosecution, however, creates higher stakes for Gonzalez given the significant amount of resources federal investigators and prosecutors have, and the greater sentence he likely faces in federal courts

rather than state court.  Gonzalez, if he stayed on his family's ranch as he has proposed, would be in a relatively isolated area and could potentially abscond before government officials could respond to his flight.  Looking at all of Gonzalez' circumstances, the Court believes his personal circumstances indicate he is a risk of flight.

  **B.  GONZALEZ IS A DANGER TO THE COMMUNITY.**

  Because the United States has shown probable cause supporting Gonzalez' federal drug charge, the statutory presumption that Gonzalez poses a danger to the community is triggered.  Even though Gonzalez has met his burden of production in response to that presumption given the restrictive conditions he has proposed and his ties to the community, the presumption remains a factor for the Court to consider in making its ultimate determination regarding detention.  See United States v. Stricklin, 932 F.2d at 1355 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.").  Based on the allegations in the Maestas Affidavit, Gonzalez participated in what appears to be the largest drug transaction of any of the co-Defendants -- the transportation in El Paso of approximately 244 kilograms of marijuana and approximately twenty-six kilograms of cocaine.  See Maestas Aff. ¶¶ 42-44, at 21.  The amount of drugs involved in this transaction, as well as the other allegations in the Maestas Affidavit regarding telephone conversations Gonzalez had about drug transactions, strongly suggest that Gonzalez has a large role in this alleged drug trafficking organization.  There are facts and allegations that connect Gonzalez to Varela in significant ways.  Varela allegedly has significant connections to the Sinaloa Mexican drug cartel. See Maestas Aff. ¶¶ 1-2, at 1-2.  Federal agents also report that Gonzalez himself has connections to the Sinaloa Cartel.  See Report at 5.  Gonzalez' drug trafficking activities provide reason to deem him a danger to the community.  See United States v. Pina-Aboite, 97 F.App'x 836, 836 (10th Cir.

2004)(unpublished)(citing United States v. Cook, 880 F.2d 1158, 1161 (10th Cir. 1989))(recognizing that the 18 U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community"). The scope of the alleged drug trafficking activity is particularly concerning to the Court. The amount of drug trafficking activity attributed to Gonzalez is significant and poses a great potential danger to the community. Gonzalez appears to have responsibility for the largest drug transaction out of all the co-Defendants. The Court does not have confidence that, if located in a remote area of New Mexico supervised by his wife, who appears not to have knowledge about all of his alleged criminal activity to date, Gonzalez would refrain from his alleged illegal activities. Consequently, the Court finds that, by clear-and-convincing evidence, Gonzalez is a danger to the community. If released, there is a significant chance that Gonzalez will return to drug trafficking. The level of Gonzalez' alleged involvement in drug trafficking counsels in favor of detention.

### III.   THE COURT BELIEVES IT CANNOT REDUCE GONZALEZ' RISK OF NONAPPEARANCE TO AN ACCEPTABLE LEVEL EVEN WITH RESTRICTIVE CONDITIONS.

Gonzalez has proposed a variety of restrictive conditions that would help mitigate his risk of nonappearance and danger to the community, including house arrest with electronic monitoring. While these conditions would -- to some extent -- mitigate his risk of nonappearance and danger to the community, the Court does not believe that they do so to an acceptable level to reasonably assure his appearance and to reasonably assure that he will not be a danger to the community. Based on the allegations against him, Gonzalez appears to be one of the largest players in this alleged drug trafficking organization. The allegations against the co-Defendants make this alleged drug trafficking organization appear sophisticated and complex. The potential scope of Gonzalez' and his co-Defendants' alleged illegal activities is greater than what the Court commonly sees among

defendants.  Gonzalez has the resources and significant incentive to flee the country.  He lived in Mexico for sixteen years, and it is plausible that he could live a comfortable life there if he chose to flee.  Likewise, given the scope of his potential involvement in drug trafficking, there is a high likelihood that he will continue to engage in drug trafficking activity upon release -- even if the Court imposes highly restrictive conditions.  That high likelihood poses a significant danger to the community.  See Harmelin v. Michigan, 501 U.S. 957, 1002 (1991)(stating that the "possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare" of the United States).  Additionally, much of his property is subject to forfeiture if the United States secures a conviction against him.  Federal officials have already seized some of his property.

The Court strives to impose restrictive conditions on defendants when doing so is feasible in lieu of detaining defendants.  The Court is particularly concerned that this case will not likely proceed to trial until 2013 based on the complexity of the case.  The Court recently issued an order designating this case as a complex case for speedy trial purposes.  See Order Declaring This Matter a Complex Case at 1-2, filed February 23, 2012 (Doc. 144).  This large amount of time is a long time to be on pretrial detention.  On the other hand, it is also a large amount of time to be on pretrial release.  The Court must remain conscious that it sits in a border district that adjoins the United States-Mexican border.  A defendant has a higher likelihood of escaping to a foreign country in this district than many other districts in the United States; people can cross the border before electronic monitoring can do much good.  There are significant risks that no third-party custodian could adequately monitor Gonzalez if he decided to flee or decided to engage in more criminal activity, particularly given that his family's ranch is in a remote location.  In the end, the risk of flight and danger to the community is too great to overcome. Consequently, the Court will order that Gonzalez

be detained pending trial.

      **IT IS ORDERED** that: (i) the Defendant's Appeal from the Magistrate's Detention Order [Doc. 101], filed February 10, 2012 (Doc. 117), is denied; (ii) the Honorable Robert H. Scott, United States Magistrate Judge's Detention Order Pending Trial, filed February 3, 2012 (Doc. 101), is affirmed; and (iii) Defendant Ramon Gonzalez, Sr. shall be detained pending trial.

                                    _____
                                      UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Reeve L. Swainston
Stephen R. Kotz
Cynthia L. Weisman
Samuel A. Hurtado
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Cody K. Kelley
Kelley Law Offices
Albuquerque, New Mexico

    *Attorneys for the Defendant*