### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                   No. CR 12-0128 JB

RAMON GONZALEZ, SR.,

       Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the United States' Motion to Strike Defendant's Motion to Suppress, filed August 28, 2014 (Doc. 685)("Motion to Strike").  The Court held a hearing on November 6, 2014.  The primary issues are: (i) whether the Court will strike Defendant Ramon Gonzalez, Sr.'s Motion to Suppress, filed August 7, 2014 (Doc. 675)("Motion to Suppress"), under rule 12 of the Federal Rules of Criminal Procedure; and (ii) whether the Court will use its inherent authority to manage its docket to strike the Motion to Suppress.  First, the Court will not use its authority under rule 12 to strike the Motion to Suppress, because Gonzalez has demonstrated good cause to excuse his untimely filing. Second, the Court will not use its inherent authority to manage its docket to strike the Motion to Suppress, because no court has previously done so, and because such use of its inherent power would be inappropriate.  Consequently, the Court will deny the Motion to Strike.

### <u>PROCEDURAL BACKGROUND</u>

Gonzalez is one of fifteen co-Defendants whom the United States indicted on January 24, 2012, in an indictment which charged the Defendants with: (i) conspiring to distribute controlled substances, in violation of 21 U.S.C. § 846; (ii) distributing fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A); (iii) conspiring to launder money, in violation of 18 U.S.C. § 1957; (iv) structuring transactions to evade reporting

requirements, in violation of 31 U.S.C. §§ 5323(a)(1), (d)(1), (d)(2); and (v) using a telephone to facilitate drug trafficking, in violation of 21 U.S.C. § 843(b).  See Indictment *passim*, filed January 24, 2012 (Doc. 2).  The Court certified this case as complex on February 23, 2012.  See Order Declaring This Matter a Complex Case, filed February 23, 2012 (Doc. 144)("Complex Certification Order").  The Court entered its first scheduling order on March 19, 2012.  See Stipulated Scheduling Order Number 1, filed March 19, 2012 (Doc. 160).  The Court entered its second, and current, scheduling order on November 2, 2012.  See Stipulated Scheduling Order Number 2, filed November 2, 2012 (Doc. 265)("Scheduling Order").  The Scheduling Order states that "defendants shall file substantive pretrial motions . . . by July 30, 2013."  Scheduling Order ¶ 7, at 4.  The Scheduling Order also specifies that the Court would set a trial date in a separate order.  See Scheduling Order ¶ 18, at 5.

The Court appointed Gonzalez' current attorney, Mr. Walz, on November 7, 2013 -- more than three months after the deadline for filing pretrial motions expired.  See Text-Only Entry on CM/ECF, entered November 7, 2013.  Gonzalez filed the Motion to Suppress on August 7, 2014.  See Motion to Suppress at 1.  The Motion to Suppress asks the Court to suppress the evidence that law enforcement officers discovered and statements that Gonzalez made during and immediately after the allegedly unlawful stop and search of Gonzalez' vehicle and trailer on November 10, 2011.  See Motion to Suppress *passim*.

1.     **The Motion to Strike.**

The United States filed the Motion to Strike on August 28, 2014.  See Motion to Strike at 1.  In the Motion to Strike, the United States asks the Court to strike the Motion to Suppress for two reasons.  See Motion to Strike at 1-4.  First, the United States argues that, under rule 12(c) of the Federal Rules of Criminal Procedure, Gonzalez waived his argument when he failed to

comply with the Court's pretrial motion deadline.  <u>See</u> Motion to Strike at 1-6.  The United States explains that rule 12(c) states that the Court may set deadlines for parties to file pretrial motions, including motions to suppress.  <u>See</u> Motion to Strike at 1.  According to the United States, rule 12(e) provides that a party waives its suppression argument if it fails to meet the Court's pretrial motions deadlines.  <u>See</u> Motion to Strike at 1 (citing Fed. R. Crim. P. 12(e)("A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides.")).  The United States contends that the Court may grant relief from this waiver only if the offending party shows good cause for its failure to meet the Court's deadline.  <u>See</u> Motion to Strike at 1 (citing Fed. R. Crim. P. 12(c); <u>United States v. White</u>, 584 F.3d 935, 948 (10th Cir. 2009)).

The United States points out that Gonzalez filed the Motion to Suppress thirteen months after the Court's pretrial motion deadline.  <u>See</u> Motion to Strike at 3.  The United States argues that Gonzalez has failed to establish good cause for his failure to meet the Court's pretrial motion deadline.  <u>See</u> Motion to Strike at 4 (citing <u>United States v. Gonzales</u>, 229 F. App'x 721, 725 (10th Cir. 2007)(unpublished); <u>United States v. Valadez-Camarena</u>, 402 F.3d 1259, 1261 (10th Cir. 2005); <u>United States v. Trobee</u>, 551 F.3d 835, 838 (8th Cir. 2009)).  The United States says that Gonzalez "will undoubtedly claim" that he did not file his Motion to Suppress in a timely manner, because he changed his attorney so many times.  Motion to Strike at 5.  In the United States' view, however, Gonzalez was aware of the information underlying the Motion to Suppress since before the pretrial motion deadline, and should have either filed the motion before the deadline with former counsel or sought an extension of the deadline through his new counsel.  <u>See</u> Motion to Strike at 5.

The United States contends that accepting Gonzalez' untimely filing would prejudice the United States.  See Motion to Strike at 5-6.  The United States points out that it must rely on the testimony of El Paso Sheriff's Deputy Luis Almonte -- who conducted the allegedly unlawful stop and search of Gonzalez -- to litigate the Motion to Suppress.  See Motion to Strike at 5.  The United States argues that it will be difficult to find Almonte because he recently retired, is now traveling around the country in a recreational vehicle, and is very difficult to reach.  See Motion to Strike at 5.  The United States also asserts -- without further explanation -- that considering the Motion to Suppress "will substantially affect the trial date."  Motion to Strike at 6.

Second, the United States argues that the Court should use its inherent authority to strike the Motion to Suppress.  See Motion to Strike at 1 n.1.  The United States explains that, because a non-standard, stipulated scheduling order is in effect, the Court retains inherent authority to manage its docket and enforce deadlines beyond rule 12's waiver provision.  See Motion to Strike at 1 n.1 (citing Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962)(holding that a trial court's power to dismiss for lack of prosecution "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); United States v. Schneider, 594 F.3d 1219, 1226 (10th Cir. 2010)("The power of district courts to manage their dockets is deeply ingrained in our jurisprudence."); United States v. Nicholson, 983 F.2d 983, 988 (10th Cir. 1993)("District courts are generally afforded great discretion regarding trial procedure applications (including control of the docket and parties), and their decisions are reviewed only for abuse of discretion."); United States v. W.R. Grace, 526 F.3d 499, 513 (9th Cir. 2008)(holding court has inherent authority to manage its docket and enforce pre-trial orders)).

2.   **The Response.**

Gonzalez responded to the Motion to Strike on September 15, 2014.  <u>See</u> Response in Opposition to United States' Motion to Strike Defendant's Motion to Suppress, filed September 15, 2014 (Doc. 689)("Response").   In the Response, Gonzalez acknowledges that he filed the Motion to Suppress after the Court's pretrial motion deadline, but contends that there is good cause for his late filing.  <u>See</u> Response at 3 (citing Fed. R. Crim. P. 12(e)).  Gonzalez argues that, at the time of the Court's deadline, his attorney -- Assistant Federal Public Defender Kari Converse -- was negotiating a plea agreement with the United States and firmly believed that they would resolve the case before trial.  <u>See</u> Response at 3.  Gonzalez points out that eleven of the original fifteen defendants indicted in this case accepted plea agreements -- seven of whom pled guilty after the Court's pretrial motion deadline.  <u>See</u> Response at 3-4.

Gonzalez explains that his current attorney -- Mr. Walz -- was appointed more than three months after the Court's pretrial motion deadline.  <u>See</u> Response at 4.  Gonzalez argues: "While having new counsel assigned should not be used as a tactic to gain time or leverage, in this case counsel has [met] with Defendant on several occasions to review and analyze the complexities of the case and to determine what specific trial tactics and defenses would be available."  Response at 4.  Gonzalez says that all of his previous attorneys have been diligent in their efforts to try to resolve the case through plea negotiations, but were unsuccessful.  <u>See</u> Response at 4.  Gonzalez concludes that he now "desires to move forward with trial and to have counsel pursue all possible defenses, including the suppression of illegally obtained evidence."  Response at 4.

### 3.    <u>The November 6, 2014, Hearing</u>.

The Court held a hearing on November 6, 2014.  <u>See</u> Transcript of Hearing (taken November 6, 2014)("Tr.").[1]  At the hearing, the United States expanded upon the two arguments that it made in its Motion to Strike.  <u>See</u> Tr. at 2:18-17:5 (Court, Swainston).  First, the United States addressed its argument that the Court can grant the Motion to Strike, because of its inherent authority to manage its docket.  <u>See</u> Tr. at 2:18-7:10 (Swainston).  The United States directed the Court to <u>United States v. Schneider,</u> in which the United States Court of Appeals for the Tenth Circuit explained that, although the Court's power to manage its docket is "crystal clear" and "deeply ingrained in our jurisprudence," the Court cannot restrict the United States' ability to present its case fairly.  Tr. at 4:3-11 (Swainston)(quoting <u>United States v. Schneider,</u> 594 F.3d at 1226)(internal quotation marks omitted).  The United States highlighted <u>Link v. Wabash Railroad Co.,</u> in which the Supreme Court said that a trial court's ability to manage its docket is "of ancient origin with roots in common law" and that the trial court can do so sua sponte.  Tr. at 4:17-24 (Schneider)(quoting <u>Link v. Wabash R.R. Co.,</u> 370 U.S. at 630)(internal quotation marks omitted).  The United States also pointed to the Court's decision in <u>United States v. Rodriguez,</u> No. CR 11-2158 JB, 2012 WL 6005756 (D.N.M. Nov. 30, 2012)(Browning, J.), which, the United States argued, dealt with nearly the exact same issues that the Court faces in this case.  <u>See</u> Tr. at 5:25-6:5 (Swainston).  The United States argued that, in that case, the Court cited <u>United States v. Adams,</u> 486 F. App'x 861 (11th Cir. 2012)(unpublished), in which the United States Court of Appeals for the Eleventh Circuit upheld the district court's refusal to address a suppression motion that the defendant filed eleven days late.  <u>See</u> Tr. at 6:25-7:5

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

(Swainston)(citing <u>United States v. Rodriguez</u>, 2012 WL 6005765, at *12).  The United States asserted that, unlike in <u>United States v. Adams</u>, Gonzalez filed the Motion to Suppress over a year after the Court's pretrial motion deadline.  <u>See</u> Tr. at 7:6-8 (Swainston).  In the United States' view, if the Eleventh Circuit upheld the district court's refusal to address Adams' suppression motion, the Court would be even more justified in refusing to address Gonzalez' motion.  <u>See</u> Tr. at 7:8-10 (Swainston).  The United States concluded that the Court should exercise its inherent authority to manage its docket by enforcing the Scheduling Order's pretrial motion deadline.  <u>See</u> Tr. at 5:2-11 (Swainston).

Second, the United States asserted that Gonzalez has failed to show good cause under rule 12 for his late filing.  <u>See</u> Tr. at 7:11-14 (Swainston).  The United States contended that it is the defendant's burden, and not the United States', to demonstrate good cause.  <u>See</u> Tr. at 9:19-10:2 (Swainston).  The United States again pointed to the Court's opinion in <u>United States v. Rodriguez</u>, in which the Court stated that the waiver rule is so strict that, even specific issues not raised in an otherwise timely suppression motion are waived when the defendant fails to sufficiently articulate them to put the Court on notice.  <u>See</u> Tr. at 9:19-10:2 (Swainston)(citing <u>United States v. Rodriguez</u>, 2012 WL 6005765, at *5-9).  The United States asserted that, by way of analogy, a defendant's failure to timely file a pretrial motion means something, and, if a defendant cannot provide good cause, the Court should not "bend over backwards to find it, identify it, articulate it for the defendant."  Tr. at 10:3-10 (Swainston).  The United States then directed the Court's attention to two cases that the Court cited in <u>United States v. Rodriguez</u>.  First, the United States discussed <u>United States v. Barajas-Chavez</u>, 358 F.3d 1263 (10th Cir. 2004).  <u>See</u> Tr. at 10:11-11:7 (Swainston).  According to the United States, in that case, the Tenth Circuit upheld the district court's holding that the defendant waived a suppression

argument, because he failed to address it in his suppression motion.  See Tr. at 10:11-11:7 (Swainston)(citing United States v. Barajas-Chavez, 358 F.3d at 1266-67).    Second, the United States cited United States v. Gonzales.  See Tr. at 11:20-13:7 (Swainston).  The United States explains that, there, the defendant filed his suppression motion nine days after the trial court's pretrial motion deadline.  See Tr. at 12:6-13 (Swainston)(citing United States v. Gonzales, 229 F. App'x at 726).  According to the United States, the Tenth Circuit held that neither the eight continuances that the trial court granted nor the defendant switching attorneys before trial established good cause.  See Tr. at 12:25-13:2 (Swainston)(citing United States v. Gonzales, 229 F. App'x at 726).  The Tenth Circuit, the United States explained, then stated that the only possible basis for good cause was ineffective assistance of counsel, which, the Tenth Circuit clarified, the defendant could address only in collateral proceedings.  See Tr. at 13:2-7 (Swainston)(citing United States v. Gonzales, 229 F. App'x at 726).

The United States said that Gonzalez has traveled through this case "with oppositional defiance in his demeanor" and has "managed to disrupt otherwise good relationships with qualified attorneys."  Tr. at 13:14-18 (Swainston).  The United States maintained that, at every turn, the Court has been extremely accommodating to Gonzales and has provided him the opportunity to develop a new relationship with a new attorney.  See Tr. at 13:20-23 (Swainston).  The United States argued that the Court should not reward Gonzalez for causing this issue by allowing him to file an untimely Motion to Suppress.  See Tr. at 13:24-14:22 (Swainston).

In response, Gonzalez said that the Court should deny the Motion to Strike for two reasons.  See Tr. at 17:10-31:1 (Walz).  First, Gonzalez argued that he did not purposefully go through a host of lawyers to delay the case.  See Tr. at 18:17-20 (Walz).  Gonzalez explained that his first lawyer -- Cody Kelly -- withdrew because the United States Attorney's Office told him

that he was too close to Gonzalez, because he had served as Gonzalez' personal lawyer and worked in the horse business with Gonzalez.  See Tr. at 18:17-25 (Walz).  Gonzalez stated that he privately retained his second lawyer -- Sid Abraham -- but he withdrew from the case because Gonzalez could not afford to pay him anymore.  See Tr. at 19:14-20 (Walz).  Gonzalez said that his third lawyer -- Ms. Converse -- asked the Court to remove her from the case.  See Tr. at 19:21-23 (Walz).  Gonzalez contended that Ms. Converse was so focused on trying to get a plea agreement that she overlooked the potential that she and the United States might not resolve the case and filed no pretrial motions.  See Tr. at 20:3-16 (Walz).  Gonzalez' current counsel -- Mr. Walz -- explained that he was appointed on November 7, 2013 -- nearly three months after the Court's pretrial motion deadline.  See Tr. at 21:10-11 (Walz).  Gonzalez stated that, when Mr. Walz first took the case, he picked up where Ms. Converse had left off and went to see if he could reach a plea agreement with the United States.  See Tr. at 21:17-22:9 (Walz).  Gonzalez contended that, when that process fell through, Mr. Walz began combing though the case materials -- which were both complex and lengthy -- to determine whether he had a valid suppression motion.  See Tr. at 22:10-25 (Walz).  Gonzalez said that he could have asked the Court for leave to file the Motion to Suppress or negotiated a new scheduling order with the United States, but, regardless, he would have filed the Motion to Suppress beyond the Court's pretrial motion deadline.  See Tr. at 23:1-17 (Walz).

Second, Gonzalez asserted that he has good cause for failing to meet the Court's pretrial motion deadline.  See Tr. at 25:6-31:1 (Walz).  Gonzalez points out that the Supreme Court of the United States has set forth four factors to determine whether a party has good cause for failing to adhere to a deadline: (i) the danger of prejudice to the nonmovant; (ii) the length of the delay and its impact on efficient court administration; (iii) the reason for delay, including

whether it was within the movant's reasonable control; and (iv) whether the movant acted in good faith.  <u>See</u> Tr. at 25:6-17 (Walz)(citing <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 285 (1993)).  Addressing the first factor -- the danger of prejudice to the nonmovant -- Gonzalez contended that there is no danger of prejudice to the United States.  <u>See</u> Tr. at 25:19 (Walz).  In Gonzalez' view, although the United States says that it will have a hard time finding Almonte to litigate the Motion to Suppress, Gonzalez would be shocked if Almonte does not show up at the suppression hearing.  <u>See</u> Tr. at 25:22-25 (Walz).  Gonzalez pointed out that, moreover, even if he never filed a suppression motion, the United States would still have to find Almonte for trial.  <u>See</u> Tr. 26:1-5 (Walz).  Gonzalez contended that, if the United States can find Almonte for trial, it can find him for whatever information that it needs to litigate the Motion to Suppress.  <u>See</u> Tr. at 26:1-12 (Walz).  Turning to the second factor -- the length of the delay -- Gonzalez asserted that, because there is currently no trial date, litigating the Motion to Suppress cannot delay a trial that has not been scheduled.  <u>See</u> Tr. at 26:13-27:1 (Walz). Addressing the third factor -- the reason for the delay -- Gonzalez argued that any delay that his late filing of the Motion to Suppress caused was not within his control, because, as he has already explained, he did not purposefully go through a series of lawyers.  <u>See</u> Tr. at 27:2-11 (Walz).  Focusing on the fourth factor -- whether the movant acted in good faith -- Gonzalez asserted that Mr. Walz did everything he could to educate himself about the case, to try to reach a plea agreement with the United States, and to file the Motion to Suppress in a timely manner. <u>See</u> Tr. at 27:12-29:17 (Walz).  Gonzalez concluded by stating that the equitable factors may weigh in favor of the United States if they were a month or two away from trial, but because there is currently no trial date, litigating the Motion to Suppress will not prejudice to the United States   <u>See</u> Tr. at 29:18-30:2 (Walz).

On rebuttal, the United States asserted that, when Gonzalez filed the Motion to Suppress, the parties were talking about scheduling a trial in November, 2014, or December, 2014.  See Tr. at 31:13-20 (Swainston).  In the United States view, there was no discussion about rescheduling the Court's pretrial motion deadline or developing a new stipulated scheduling order.  See Tr. at 31:22-32:25 (Swainston).  The United States argues that it did not intend to prevent Mr. Walz from filing a suppression motion when he first took the case, but Mr. Walz gave every indication that he did not intend to file such a motion.  See Tr. at 32:25-33:7 (Swainston).

The United States responded to Gonzalez' assertion that it told Mr. Kelley to withdraw from the case by stating: "That didn't happen."  Tr. at 33:8-9 (Swainston).  The United States explained that it remembered Mr. Kelly saying that "he felt too close to" Gonzalez and that Gonzalez would look for a new lawyer.  Tr. at 33:10-12 (Swainston).  Turning to Gonzalez' good-cause argument, the United States asserted that the parties had a "very tightly constrained and well-worked-out scheduling order that needed to be adhered to, and if it couldn't -- it was the duty of the defendant to come to the court and to myself and begin addressing that."  Tr. at 34:7-12 (Swainston).  In response, Gonzalez asked why, if the United States was more than willing to agree to a new scheduling order when Mr. Walz first took the case, it is not still willing to do so.  See Tr. at 35:18-36:1 (Walz).  Gonzalez pointed out that, aside from him filing the Motion to Suppress, nothing has changed -- the parties still do not have a trial date.  See Tr. at 36:6-16 (Walz).

Upon the Court's questioning, the parties clarified that they discussed a November, 2014, or December, 2014, trial date around July, 2014.  See Tr. at 37:5-9 (Court).  The Court asked why Gonzalez did not tell the United States at that point that he intended to file the Motion to Suppress.  See Tr. at 37:13-16 (Court).  Gonzalez replied that he had not decided whether he

would file the motion, because he was still reviewing the evidence and interviewing witnesses.

See Tr. at 37:17-38:5 (Court, Walz).  The Court asked the United States whether it would have

agreed to a new scheduling order in July, 2014, if Gonzalez had said at that time that he intended

to file a suppression motion.  See Tr. at 41:25-42:5 (Court).  The United States said that it would

have agreed to a scheduling order at that time.  See Tr. at 42:6-43:5 (Swainston).  The Court

asked the United States what the difference was between Gonzalez telling the United States in

July, 2014, that he intended to file a suppression motion and filing the motion without saying

anything on August 7, 2014.  See Tr. at 43:6-10 (Court).  The United States responded:

> The presumption was by the filing alone, the presumption was, forget the prior
> scheduling order.  I'm just going to file a substantive motion, and the Government
> has to respond to it whenever it responds to it.  I don't know if the assumption
> was that we would revert back to the local district court rules or if we'd remain
> with the time frame in the stipulated scheduling order. . . .  But these assumptions
> weren't accurate and they're not fair.  They weren't fair to me, they weren't fair
> to the Court.  And I think just procedurally, the Court has a right to expect from
> the parties adherence to its orders.  The Court has a right to expect from the
> parties adherence to scheduling orders, especially when they're in place in a
> complex litigation case, and me as a party had a right to rely on the
> representations of counsel that nothing needed to be addressed but the
> development of the trial date.  I wish that I had gotten that call because we
> wouldn't be here today and instead we'd be working through the third stipulated
> scheduling order.

Tr. at 44:10-45:9 (Swainston).

The Court said that complex cases with multiple defendants are handled differently than

single-defendant cases.  See Tr. at 45:12-19 (Court).  The Court stated that the reality is that Mr.

Walz had strategic differences with Gonzalez' previous attorneys.  See Tr. at 46:2-5 (Court).

The Court explained that it did not seem like a good idea to punish Gonzalez and Mr. Walz for

the decisions of Gonzalez' prior attorneys.  See Tr. at 46:13-15 (Court).  The Court said that

Gonzalez had presented good cause why he did not meet the Court's pretrial motion deadline.

See Tr. at 46:15-18 (Court).  The Court further explained that Gonzalez' late filing did not

prejudice the United States.   See Tr. at 46:18-22 (Court).   The Court stated that, because Gonzalez did not file the Motion to Suppress on the eve of trial and the Court has not set a trial date, it seems overly formalistic to insist upon compliance with a deadline that had passed before Mr. Walz took the case.   See Tr. at 46:23-47:3 (Court).   The Court said that, consequently, it was inclined to deny the Motion to Strike.   See Tr. at 47:6-10 (Court).

## LAW REGARDING RULE 12

Rule 12(b)(3) states that a motion to suppress evidence "must be raised before trial." Fed. R. Crim. P. 12(b)(3).   Rule 12(c) states that "[t]he court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing."  Fed. R. Crim. P. 12(c).   See United States v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990)("The district court has the authority to establish a schedule of deadlines for defendants to file motions and requests prior to trial under Rule 12(c) of the Federal Rules of Criminal Procedure.").   "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely."  Fed. R. Crim. P. 12(c)(3).

A court may consider an untimely motion only if the moving party shows good cause. See Fed. R. Crim. P. 12(c)(3).[2]  "A district court's decision to decline to hear an untimely

---

[2]Rule 12(c)(3) now governs the review of untimely claims that rule 12(e) previously addressed.  See Fed. R. Crim. P. 12, Advisory Committee Notes to 2014 Amendment.  In the explanation for the 2014 amendments, the rulemakers state:

> Rule 12(e) provided that a party "waives" a defense not raised within the time set under Rule 12(c).  Although the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right, Rule 12(e) has never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion.  Accordingly, to avoid possible confusion the Committee decided not to employ the term "waiver" in new paragraph (c)(3).

> The standard for review of untimely claims under new paragraph 12(c)(3)

---

depends on the nature of the defense, objection, or request.  The general standard for claims that must be raised before trial under Rule 12(b)(3) is stated in (c)(3)(A), which -- like the present rule -- requires that the party seeking relief show "good cause" for failure to raise a claim by the deadline.  The Supreme Court and lower federal courts have interpreted the "good cause" standard under Rule 12(e) to require both (1) "cause" for the failure to raise the claim on time, and (2) "prejudice" resulting from the error.  Davis v. United States, 411 U.S. 233, 242 (1973); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 363 (1963).

New subparagraph (c)(3)(B) provides a different standard for one specific claim: the failure of the charging document to state an offense.  The Committee concluded that judicial review of these claims, which go to adequacy of the notice afforded to the defendant, and the power to bring a defendant to trial or to impose punishment, should be available without a showing of "good cause."  Rather, review should be available whenever a defendant shows prejudice from the failure to state a claim.  Accordingly, subparagraph (c)(3)(B) provides that the court can consider these claims if the party "shows prejudice."  Unlike plain error review under Rule 52(b), the standard under Rule (12)(c)(3)(B) does not require a showing that the error was "plain" or that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Nevertheless, it will not always be possible for a defendant to make the required showing of prejudice.  For example, in some cases in which the charging document omitted an element of the offense, the defendant may have admitted the element as part of a guilty plea after having been afforded timely notice by other means.

Fed. R. Crim. P. 12, Advisory Committee Notes to 2014 Amendment.  The new amendment to rule 12 does not appear to have altered the general "waiver" provision that was previously found in rule 12(e) -- i.e., that a party who fails to meet the district court's deadline for one of the motions set forth in rule 12(b)(3) loses its right to argue that motion unless it demonstrates good cause.  Instead, the amendment clarifies that the previous standard did not require a district court to find that the moving party intentionally relinquished a known right.  Consequently, previous cases interpreting and applying rule 12(e) appear to be good law.  The Advisory Committee Notes confirm this interpretation by stating: "The general standard for claims that must be raised before trial under Rule 12(b)(3) is stated in (c)(3)(A), which -- like the present rule -- requires that the party seeking relief show 'good cause' for failure to raise a claim by the deadline."  Fed. R. Crim. P. 12, Advisory Committee Notes to 2014 Amendment (emphasis added).  Thus, for general claims and defenses that must be raised before trial under rule 12(b)(3) -- e.g., motions to suppress -- the standard remains the same: the district court may consider the untimely motion only if the moving party demonstrates "good cause."  Fed. R. Crim. P. 12, Advisory Committee Notes to 2014 Amendment.

The 2014 Amendment alters, however, the standard for one specific claim: "the failure of the charging document to state an offense."  Fed. R. Crim. P. 12, Advisory Committee Notes to 2014 Amendment.  In those cases, the moving party need not show "good cause," but must instead show only "prejudice."  Fed. R. Crim. P. 12, Advisory Committee Notes to 2014 Amendment.

suppression motion is reviewed for abuse of discretion."   United States v. Gonzales, 229 F.

App'x at 725 (quoting United States v. Booker, 952 F.2d 247, 249 (9th Cir. 1991)).   The Tenth

Circuit, in United States v. Bryant, 5 F.3d 474 (10th Cir. 1993), held that the record clearly

indicated that the defendant failed to show cause for his failure to make a timely motion raising

his selective prosecution argument before trial.   See 5 F.3d at 476.   The Tenth Circuit explained:

"The fact that trial counsel, who had been serving as co-counsel in Defendant's case, was not

officially appointed by the court until two days before trial was not sufficient cause."   5 F.3d at

476.   "Defendant has made no allegations that prior defense counsel was prevented from filing

the motion or that trial counsel, during the time he served as co-counsel, was prevented from

filing, or urging Defendant's second counsel to file the motion."   5 F.3d at 476.

In United States v. Gonzales, the Tenth Circuit held that the district court did not abuse

its discretion when it determined that the defendant's motion to dismiss and motion to disclose

the identity of the confidential informant were untimely.   See 229 F. App'x at 726.   The

defendant filed his motions one day before his trial was set to begin, and nine days after the

deadline for pretrial motions.   See 229 F. App'x at 726.   The Tenth Circuit noted that the

defendant did not argue that the facts upon which his motions relied could not have been fully

discovered by the date set for those motions.   See 229 F. App'x at 726.

> He does argue that the district court should have inquired whether there
> was good cause for the untimely motions before summarily dismissing them. Had
> the court done so, he contends, it would have recognized that the eight
> continuances during the course of Mr. Gonzales's representation by two separate
> counsel resulted in the filing of no substantive motions on his behalf.   He argues
> that "[t]he issues in the [present] motions were, essentially, Mr. Gonzales' only
> legal defense."   Mr. Gonzales suggests that the district court should have
> exercised its discretion to hear his untimely motions "in the furtherance of
> justice."
>
> . . . .

- 15 -

When the district court appointed Mr. Bierly in August 2005, it informed him that there would be no more continuances and to be prepared for trial beginning in October 2005. Mr. Gonzales did not indicate that he disagreed with his counsel's tactics before trial. There is no cause given for the belated filings, apart from Mr. Gonzales's present contention of ineffective assistance of counsel, which we address below. Moreover, the district court also dismissed the motions on the merits, further undermining Mr. Gonzales's argument. Accordingly, we hold that the district court did not abuse its discretion when it determined that Mr. Gonzales's motion to dismiss and motion to disclose the identity of the confidential informant were untimely.

229 F. App'x at 726.

## ANALYSIS

The Court will deny the Motion to Strike. First, Gonzalez has shown good cause under rule 12 for his failure to comply with the Court's pretrial motion deadline. Second, the Court will not use its inherent discretion to control its docket by striking the untimely Motion to Suppress.

## I. GONZALEZ HAS SHOWN GOOD CAUSE UNDER RULE 12 FOR HIS FAILURE TO COMPLY WITH THE COURT'S PRETRIAL MOTION DEADLINE.

Gonzalez has shown good cause for his failure to comply with the Court's pretrial motion deadline. Rule 12(c)(1) provides that a trial court has authority to set deadlines for pretrial motions. See Fed. R. Crim. P. 12(c)(1). Under rule 12(c)(3), a court cannot consider a suppression motion filed after the trial court's pretrial motion deadline absent a showing of good cause. See Fed. R. Crim. P. 12(c)(3)("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the moving party shows good cause."); United States v. Miller, 987 F.2d 1462, 1464 (10th Cir. 1993)("[T]he district court . . . may grant relief from the waiver for cause shown.").

As an initial matter, the Court must determine the appropriate standard for evaluating good cause. Gonzalez contends that the Court should use the four-factor test that the Supreme

Court set forth in Pioneer Investment Services Co. v. Brunswick Associates Ltd.  In that case, however, the Supreme Court analyzed whether a movant's failure to comply with a bankruptcy court's deadline was the result of "excusable neglect" under rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure.  507 U.S. at 382-83.  The Supreme Court mentioned neither "good cause" nor the Federal Rules of Criminal Procedure.  Moreover, no court has used the four-factor excusable neglect standard from Pioneer Investment Services Co. v. Brunswick Associates Ltd. to determine whether a party has good cause for failing to meet a court's deadline under rule 12 of the Federal Rules of Criminal Procedure.

In Davis v. United States and Shotwell Manufacturing Co. v. United States, the Supreme Court explained that, to demonstrate good cause under rule 12, the moving party must show both (i) the cause for its failure to raise the claim, objection, or defense on time; and (ii) the prejudice that it would suffer from not being able to raise the claim, objection, or defense.  See Davis v. United States, 411 U.S. at 243 (upholding the district court's decision to deny relief from a rule 12 waiver where the defendant failed to establish good cause to excuse his untimely motion and the prejudice that would result from not litigating his motion); Shotwell Mfg. Co. v. United States, 317 U.S. at 362-63 (holding that, because the defendants did not explain why they failed to raise their objections on time, and because the defendants did not point to any prejudice from not litigating their objections, the trial court properly held that their objections were waived under rule 12).  The Advisory Committee's Note to the 2014 Amendment to rule 12 confirm that this two-part good-cause test is still good law after the most recent amendment to rule 12.  See Fed. R. Crim. P. 12 advisory committee's note to 2014 amendments ("The Supreme Court and lower federal courts have interpreted the 'good cause' standard under Rule 12(e) to require both (1) 'cause' for the failure to raise the claim on time, and (2) 'prejudice' resulting from the error.

<u>Davis v. United States</u>, 411 U.S. 233, 242 (1973); <u>Shotwell Mfg. Co. v. United States</u>, 371 U.S. 341, 363 (1963).").   Notably, this standard does not require a district court to consider the prejudice that accepting an untimely motion may cause the United States in determining good cause.

Gonzalez has established both prongs of the Supreme Court's good-cause standard.  First, Gonzalez has provided cause for why he failed to file his Motion to Suppress on time.  Gonzalez explained that the Court appointed his current attorney three months after the Court's pretrial motion deadline -- making it impossible for that attorney to meet the deadline.  Gonzalez also told the Court why each of his previous attorneys failed to file a suppression motion.  Gonzalez explained that his first lawyer -- Mr. Kelly -- withdrew because the United States told him that he was too close to Gonzalez as he had served as Gonzalez' personal lawyer and had worked in the horse business with Gonzalez.  <u>See</u> Tr. at 18:17-25 (Walz).  Gonzalez stated that he privately retained his second lawyer -- Mr. Abraham -- but Mr. Abraham withdrew from the case because Gonzalez could not afford to pay him anymore.  <u>See</u> Tr. at 19:14-20 (Walz).  Gonzalez said that his third lawyer -- Ms. Converse -- was in plea negotiations with the United States while the deadline passed and ultimately asked the Court to remove her from the case.  <u>See</u> Tr. at 19:21-23 (Walz).  Although Ms. Converse perhaps should have filed a suppression motion -- or at least asked for a new scheduling order -- before the pretrial motion deadline, her decision not to file a motion was reasonable in light of the fact that eleven of the fifteen original co-defendants in this case pled guilty -- seven of whom did so after the pretrial motion deadline.  Moreover, the Court cannot fault Gonzalez' current counsel -- Mr. Walz -- for not filing a suppression motion immediately after he took the case.  Mr. Walz has stated that he did not do so for two reasons: (i) he wanted to pick up where Ms. Converse had left off and see if he could resolve this case

through a plea agreement; and (ii) once it became clear that Gonzalez would not reach an agreement with the United States, he wanted to take the necessary time to review the discovery and interview witnesses to determine if he should file a suppression motion.  Given that the Court has already certified this case as complex -- recognizing the voluminous and complicated nature of the discovery and issues in this case -- the Court finds Mr. Walz' actions reasonable. Consequently, Gonzalez has met the first prong of the Supreme Court's good-cause standard.

Second, Gonzalez has shown that he would experience significant prejudice if the Court did not consider his suppression motion.  Gonzalez moves to suppress any statements made or evidence seized as a result of the alleged unlawful stop of his vehicle on November 10, 2011. See Motion to Suppress at 1.  It appears that the United States discovered a significant amount of marijuana and cocaine wrapped and packed in a duffel bag hidden in the forward section of a trailer attached to Gonzalez' vehicle.  See Motion to Suppress at 3.  Given that Gonzalez has been charged with, among other things, conspiring to distribute controlled substances, the Court's resolution of the Motion to Suppress will likely have a significant impact on the United States' case and, ultimately, Gonzalez' odds of conviction.  See Indictment at 1.  Consequently, Gonzalez would suffer significant prejudice if the Court does not adjudicate his Motion to Suppress.  Because Gonzalez has met both prongs of the Supreme Court's good-cause standard, the Court concludes that there is good cause to excuse Gonzalez' untimely filing of the Motion to Suppress.

The cases that the United States cites do not dictate a different result.  In United States v. Gonzales, the Tenth Circuit held that the defendant's contention that he received ineffective assistance of counsel did not provide good cause for his failure to file pretrial motions until the day before trial -- i.e., nine days after the district court's pretrial motion deadline.  See 229 F.

App'x at 723, 726.  In <u>United States v. Valadez-Camarena</u>, the Tenth Circuit upheld the district court's decision that the defendant did not provide good cause for his failure to challenge the procedural defects in his indictment until after his trial.  <u>See</u> 402 F.3d at 1260-61.  In <u>United States v. Barajas-Chavez</u>, the Tenth Circuit upheld the district court's conclusion that the defendant waived one of his suppression arguments when he failed to raise it in his pretrial suppression motion.  <u>See</u> 358 F.3d at 1267. [3]

Although the Tenth Circuit has not articulated what standard or factors courts should use to determine whether there is good cause to excuse an untimely filing under rule 12, it appears that three concerns drove the Tenth Circuit's holdings in the cases that the United States cites: (i) the late filing's effects on the trial court -- both in terms of the trial court's ability to manage the case and its ability to retain the credibility of its deadlines in future cases; (ii) the late filing's effects on the United States -- both in terms of preparing for trial in this case and scheduling its other cases; and (iii) the prejudice that the defendant may suffer if he or she cannot file the motion -- <u>i.e.</u>, the importance of the motion to the defendant's case and constitutional rights.  It is not difficult to conclude that, despite the significant prejudice that a defendant experiences by not being able to litigate a suppression motion, filing such a motion on the eve of trial -- as occurred in all three Tenth Circuit cases that the United States cites -- so significantly upends the trial court's docket, and the United States' schedule and trial strategy, that the balance of these factors weighed against finding good cause.

---

[3]At the hearing on the Motion to Strike, the United States also cited the Court's decision in <u>United States v. Rodriguez</u>.  In that case, the Court concluded that, although the defendant failed to raise in his suppression motion his argument that he officers unlawfully arrested him, he did not waive the argument, because he made it during the suppression hearing.  <u>See</u> 2012 WL 6005765.  Aside from applying rule 12 -- albeit in a different context -- the Court does not see how <u>United States v. Rodriguez</u> supports the United States' position.  Consequently, the Court concludes that it does not dictate a different result.

Other Courts of Appeals have found that similar concerns animate rule 12's good-cause standard.  In United States v. Worthington, for example, in an opinion that the Honorable Paul C. Weick, United States Circuit Judge for the Sixth Circuit, authored, and Judges Contie and Edwards joined, the Sixth Circuit explained:

> As the Supreme Court has recognized, the rule requiring criminal defendants to make their suppression motions before trial "is a crystallization of decisions . . . requiring that procedure, and is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt." Jones v. United States, 362 U.S. 257, 264 (1960), overruled on other grounds, United States v. Salvucci, 448 U.S. 83 (1980).  The rationale usually given for removing suppression questions from the trial itself is that "interrupt[ing] the course of the trial for such auxiliary inquires impedes the momentum of the main proceeding and breaks the continuity of the jury's attention." (cites omitted) Furthermore, a pre-trial decision whether the challenged evidence is admissible gives the Government the time and flexibility to change its theory of the case, to develop or place greater reliance upon untainted evidence or otherwise to modify its trial strategy in response to an adverse ruling.
>
> In applying the pre-trial motion rule, "we are dealing with and carrying out an important social policy and not a narrow, finicky procedural requirement." Jones v. United States, supra, 362 U.S. at 264.  Where the rule's underlying policy is not implicated, its technical requirements should not be allowed to prevail over constitutional rights.

United States v. Worthington, 698 F.2d 820, 823-24 (6th Cir. 1983)(quoting United States v. Cassity, 631 F.2d 461 (6th Cir. 1980)(internal quotation marks omitted).  Similarly, in United States v. Trobee, in an opinion that the Honorable Steven M. Colloton, United States Circuit Judge for the Eighth Circuit, authored, and Judges Murphy and Shepherd joined, the Eighth Circuit stated:

> The absence of prejudice or delay in the trial may be relevant to whether the district court is willing to grant relief, but those factors themselves do not require a finding of "good cause."  Courts have a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases.

551 F. 3d at 838.

Applying the factors from the Tenth Circuit and other United States Courts of Appeals that have applied rule 12's good-cause standard, the Court concludes that Gonzalez has shown good cause to excuse his untimely filing.  First, Gonzalez' late filing has little to no effect on the Court.  As the Court has previously explained, Gonzalez filed the Motion to Suppress before the Court set a trial for this case.  Although pretrial motion practice certainly means more work for the Court, the Court's job is to adjudicate the constitutional issues that Gonzalez raises. Moreover, the Court concludes that allowing Gonzalez to litigate his Motion to Suppress has only a marginal impact on the credibility of the Court's deadlines in future cases.  Attorneys and defendants understand that complex cases present unique challenges and often require the Court -- as well as the parties -- to be creative and flexible in dealing with those challenges.  Given the nature of the discovery and the legal issues, complex cases often take much longer to resolve and typically have many defendants reach plea agreements with the United States without litigating any pretrial motions.  All of these concerns weigh towards using a more forgiving approach to pretrial motion deadlines in complex cases.  Accordingly, the Court would find it difficult to conclude that, because it was willing to litigate this untimely motion, any party before the Court can now disregard the Court's pretrial motion deadlines in this case or in others.  Consequently, this factor weighs only slightly against finding good cause.

Second, litigating Gonzalez' untimely Motion to Suppress will have little to no effect on the United States.  The United States argues that the untimely filing would make it more difficult for it to find Almonte, a key witness for the Motion to Suppress who is apparently travelling the country in a recreational vehicle.  The United States fails to acknowledge, however, that it would have had to find Almonte for a timely suppression motion or, at the very least, for trial.  The United States has not explained why -- and there is no evidence indicating that -- litigating

Gonzalez' untimely motion would make either of those tasks more difficult than they already were. The United States also said, without further explanation, that Gonzalez' untimely filing will push back its expected trial date. While the Court is sympathetic to the United States wanting to resolve cases as quickly as possible, failing to satisfy the United States' ideal timeline for this case -- especially when the Court had not set a trial date -- does not prejudice the United States. Aside from these two reasons, the United States has not offered any arguments or evidence that litigating the untimely suppression motion would affect the United States' ability to prepare for trial in this case or its schedule in other cases. Accordingly, this factor is neutral.

Third, as the Court has already explained, Gonzalez will suffer significant prejudice if the Court does not litigate the Motion to Suppress. The Court does not know how important of a role the evidence that Gonzalez is moving to suppress will play in the United States' case-in-chief, but the Court expects that hearing testimony that the United States discovered a significant quantity of marijuana and cocaine in Gonzalez' trailer will certainly make it more difficult for Gonzalez' to obtain an acquittal. Consequently, this factor weighs heavily in favor of finding good cause. As the first factor only weighs slightly against finding good cause, the second factor is neutral, and the third factor weighs heavily in favor of finding good cause, the Court concludes that Gonzalez has established good cause for his untimely filing.

In addition to these factors, the Court would also consider a fourth -- whether litigating the Motion to Suppress furthers the "appearance of justice." Glover v. Gartment, 899 F. Supp. 2d 1115, 1138 n.5 (D.N.M. 2012)(Browning, J.). The Court has previously said that getting a decision in a case "right," -- i.e., correctly stating and applying the law to the facts of a case -- "is only one-half of a judge's task." 899 F. Supp. 2d at 1138 n.5. The other half of dispensing justice is "the appearance of justice" -- i.e., "did the Court listen to the litigant's arguments,

wrestle with those arguments, and deal with them in an intellectually honest way." 899 F. Supp. 2d 1115, 1138 n.5.   In the Court's view, "Americans are relatively good about accepting a judicial decision -- even an adverse one -- and cease obsessing over an issue, if they are convinced that an authority figure has dressed up, taken them seriously, listened patiently and politely, wrestled with the arguments, addressed them, and accurately stated the facts."   899 F. Supp. 2d 1115, 1138 n.5.   These concerns generally weigh in favor of litigating untimely motions.  That Gonzalez' liberty is at stake, and a finding of guilt or innocence in this case will profoundly affect the rest of his life, however, makes these concerns even more significant in this case and counsels against using an overly formalistic interpretation of rule 12 to prevent him from exercising his constitutional rights.  Consequently, this factor further tips the scale in favor of finding good cause.

In the Court's view, the dispute between the parties is a curious one.  Refusing to litigate a defendant's untimely suppression argument seems appropriate only when it is clear that the defendant is trying to game the system -- i.e., filing the suppression motion at the eleventh hour before trial.  In cases like this one, however, where the defendant files the suppression motion well before the Court has set a trial date, litigating the motion does not prejudice anyone involved beyond requiring the defendant's attorney, the United States, and the Court, to do their jobs and litigate issues.  The only party that such a late filing prejudices is the defendant, because he has to stay incarcerated for a longer period than if he had gone straight to trial and received an acquittal.  In the end, it seems like this dispute arose because Gonzalez did not contact the United States to negotiate a new scheduling order before filing the suppression motion.  This outcome is unfortunate.  The Court gives the parties the benefit of the doubt whenever possible.  The United States has, in some cases, an equal or larger role than the Court in creating the appearance of

justice for criminal defendants.  In any event, because the Court concludes that Gonzalez has established good cause under rule 12 for his untimely filing, the Court will not use its authority under rule 12 to strike the Motion to Suppress.

## II.    THE COURT WILL NOT USE ITS INHERENT AUTHORITY TO MANAGE ITS DOCKET BY STRIKING THE MOTION TO SUPPRESS AS UNTIMELY.

The Court will not use its inherent discretion beyond rule 12 to manage its docket by striking the Motion to Suppress.  In the Motion to Strike, the United States cites four cases for the proposition that the Court should use its inherent authority to manage its docket by striking the Motion to Suppress as untimely.  The Court concludes that none of those cases requires the Court to strike the Motion to Suppress.  First, the United States cites United States v. Schneider, in which the Tenth Circuit held that the district court erred when it excluded all evidence related to seventeen of the eighteen allegations in a single count of the indictment.  See 594 F.3d at 1219.  The Tenth Circuit, in an opinion that the Honorable Terrence L. O'Brien, United States Circuit Judge for the Tenth Circuit, authored, and Judges Tacha and Gorsuch joined, explained that, although a district court's power to manage its docket is "deeply ingrained" in Tenth Circuit jurisprudence, the district court cannot use that power to "foreclose the government from fairly presenting its case."  594 F.3d at 1219.  The Tenth Circuit's reasoning certainly applies in this case, but it dictates the opposite result than the one the United States seeks.  Far from indicating that the Court must -- or even should -- strike the Motion to Suppress as untimely, United States v. Schneider says that the Court cannot use its inherent authority to manage its docket to foreclose Gonzalez from fairly presenting his case.  Consequently, United States v. Schneider supports, rather than undermines, the Court's decision.

Second, the United States cites Link v. Wabash Railroad Co., in which the Supreme Court, in an opinion that the Honorable John Marshall Harlan, then-Associate Justice of the

Supreme Court, authored, said that a trial court's ability to manage its docket is "of ancient origin with roots in common law" and that the trial court can do so sua sponte.  Tr. at 4:17-24 (Schneider)(quoting Link v. Wabash R.R. Co., 370 U.S. at 630)(internal quotation marks omitted).  Justice Harlan was referring to a district court's authority to dismiss a civil case with prejudice for a plaintiff's failure to timely prosecute it.  See 370 U.S. at 629 ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted.").  Justice Harlan did not address, however, whether a district court can strike a motion in a criminal case for untimeliness.  Given the wide variety of differences between criminal cases and civil ones, the Court finds Justice Harlan's words unenlightening on the issue whether it should use its inherent authority to strike the Motion to Suppress for untimeliness.

Third, the United States cites United States v. Nicholson, in which the Tenth Circuit upheld the district court's decisions to move up the trial date six days and deny the defendant's motion for a continuance.  See 938 F.2d at 988.  Unlike in United States v. Nicholson, however, Gonzalez filed a suppression motion rather than a motion for continuance.   Because a suppression motion directly implicates a defendant's constitutional rights and a continuance does not, United States v. Nicholson is inapposite.

Fourth, the United States cites United States v. W.R. Grace, which stands only for the unremarkable proposition that a district court can require parties to disclose finalized witness lists well before the trial date.  See 526 F.3d at 509 ("[A] witness disclosure order directed to the government is within the district court's discretion to impose and enforce.").  In that case, the United States Court of Appeals for the Ninth Circuit did not say anything about a district court's

inherent authority to strike down untimely motions.  See 526 F.3d at 499-527.  Consequently, it is inapposite.

As the Court has already concluded that Gonzalez has provided good cause under rule 12 for his failure file the Motion to Suppress on time, and the United States has not cited -- and the Court has been unable to find -- a case in which a district court has used its inherent discretion to strike down a suppression motion as untimely, the Court will not do so here.

**IT IS ORDERED** that the United States' Motion to Strike Defendant's Motion to Suppress, filed August 28, 2014 (Doc. 685), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Reeve L. Swainston
Stephen R. Kotz
Samuel A. Hurtado
Cynthia L. Weisman
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*
Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

      *Attorneys for the Defendant*

- 27 -