**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                 No. CR 12-0128 JB

RAMON GONZALEZ, SR.,

      Defendant.

**UNSEALED MEMORANDUM OPINION AND ORDER[1]**

**THIS MATTER** comes before the Court on Defendant Ramon Gonzalez, Sr.'s Objections to Presentence Investigation Report, filed April 16, 2016 (Doc. 860)("Objections"). The Court held a sentencing hearing on May 16, 2016. The primary issue is whether the Court should enhance Defendant Ramon Gonzalez, Sr.'s base offense level by 2 levels under United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(b)(1), because he possessed a Taser when he committed a drug crime. Because the record is sufficient to establish that Gonzalez, Sr. possessed a Taser -- which the Court concludes is a "dangerous weapon" within § 2D1.1(b)(1)'s meaning -- and because Gonzalez, Sr. has not shown that it is clearly improbable that the Taser was used in connection with the underling crime, the Court will overrule Gonzalez, Sr.'s objection and apply the 2-level enhancement.

---

[1] In its Sealed Memorandum Opinion and Order, filed May 20, 2016 (Doc. 875)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. See Sealed MOO at 1 n.1. The Court gave the parties fourteen calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in its unsealed form.

**FACTUAL BACKGROUND**

"[O]n November 10, 2011, at approximately 4:00am, an El Paso County, Texas Sheriff's deputy initiated a traffic stop on a truck and horse trailer that was driven by Gonzalez, Sr." Presentence Investigation Report ¶ 32, at 13, disclosed February 9, 2016 ("PSR"). "The traffic stop was based on a license plate registration violation." PSR ¶ 32, at 13. "During the stop, Gonzalez, Sr. consented to a search of the vehicles and indicated he had 'nothing illegal' in his possession." PSR ¶ 32, at 13. "The sheriff's deputy deployed his trained canine, which alerted to the rear portion of the trailer." PSR ¶ 32, at 13. "During a subsequent search of the trailer, 494 bundles of marijuana, weighing a total of 244 gross kilograms, were located in cardboard boxes." PSR ¶ 32, at 13. "In addition, a duffle bag was located in the trailer and inside the duffle bag were 19 bundles of cocaine, weighing a total of 26 gross kilograms." PSR ¶ 32, at 13. "A taser was also located in Gonzalez, Sr.'s truck." PSR ¶ 32, at 13.

**PROCEDURAL BACKGROUND**

Gonzalez, Sr. is one of fifteen co-Defendants whom the United States indicted on January 24, 2012, in an indictment which charged the Defendants with: (i) conspiring to distribute controlled substances, in violation of 21 U.S.C. § 846; (ii) distributing fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A); (iii) conspiring to launder money, in violation of 18 U.S.C. § 1957; (iv) structuring transactions to evade reporting requirements, in violation of 31 U.S.C. §§ 5323(a)(1), (d)(1), (d)(2); and (v) using a telephone to facilitate drug trafficking, in violation of 21 U.S.C. § 843(b). See Indictment, filed January 24, 2012 (Doc. 2). On December 30, 2015, Gonzalez, Sr. agreed to plead guilty to "an Information, charging a violation of 21 U.S.C. § 846, that being, Conspiracy to Distribute Controlled Substances." Plea Agreement ¶ 3, at 2, filed December 30, 2015 (Doc. 842). The United States

Probation Office ("USPO") disclosed Gonzalez, Sr.'s PSR on February 9, 2016. The sentencing hearing was scheduled, after several motions to continue, for May 16, 2016.

On April 16, 2016, Gonzalez, Sr. filed an objection to paragraph 102 of the PSR, which calculated a 2-level enhancement to Gonzalez, Sr.'s offense level for possession of a dangerous weapon during the commission of the underlying offense, pursuant to U.S.S.G. § 2D1.1(b)(1). See PSR ¶ 102, at 29. He asserts that he "was not in possession of a taser" and that "a taser is not a firearm, which would trigger the 2 level increase." Objections ¶ 10, at 3. At the hearing, Gonzalez, Sr. also emphasized that he was unaware that the Taser was present in the vehicle he was driving. See Transcript of Hearing 10:5-16:10 (Court, Darnell, Swainston)(taken May 16, 2016)("Tr.").[2]

## LAW REGARDING U.S.S.G. § 2D1.1(b)(1)

An offender sentenced under § 2D1.1 of the Sentencing Guidelines is subject to a 2–level enhancement to his base-offense level if "a dangerous weapon (including a firearm) was possessed" during the underlying drug-trafficking offense. U.S.S.G. § 2D1.1(b)(1). "The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1, cmt. n. 3. The enhancement is expressed in the passive voice, and Application Note 3 to the Guidelines specifies that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n. 3. See United States v. Hernandez-Mejia, No. CR 05-0469 JB, 2008 WL 5978897, at *6-7 (D.N.M. Nov. 19, 2008)(Browning, J.).

---

[2]The Court's citations to the Tr. refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

The United State Court of Appeals for the Tenth Circuit has held that, for the 2-level enhancement to apply, "[t]he government must show by a preponderance of the evidence that 'a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. . . .'" United States v. Sallis, 533 F.3d 1218, 1225 (10th Cir. 2008)(quoting United States v. Pompey, 264 F.3d 1176, 1180 (10th Cir. 2001)(internal quotation omitted)). See United States v. McClure, 358 F. App'x 5, 10 (10th Cir. 2010)("[T]he government need only show the weapon was found in the same location where drugs or drug paraphernalia are stored or in the general vicinity of where part of the drug activity occurred."); United States v. Beltran, 571 F.3d 1013, 1021 (10th Cir. 2009)("To satisfy its burden for application of a two level enhancement under USSG § 2D1.1(b)(1), the government must show a temporal proximity between a weapon, the drug trafficking activity, and a defendant."); United States v. Hernandez-Mejia, 2008 WL 5978897, at *6-7. "If it does so, the burden shifts to the defendant, who must demonstrate that this connection is clearly improbable." United States v. Sallis, 533 F.3d at 1225 (quotation omitted). "[T]he government need only show that 'the weapon was found in the same location where drugs or drug paraphernalia are stored,'" United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1186-87 (10th Cir. 2004), or "that the weapon was located nearby the general location where drugs or drug paraphernalia are stored or where part of the transaction occurred," United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998)(quotation omitted). See United States v. Hall, 473 F.3d 1295, 1312 (10th Cir. 2007)(upholding enhancement where "shotgun was found in a car sitting right outside [defendant's] residence and easily accessible through the top of the vehicle . . . [and] other drug paraphernalia was found at the house, including scales with cocaine residue on them."); United States v. Humphrey, 208 F.3d 1190, 1211 (10th Cir. 2000)(upholding enhancement when gun found in trunk of defendant's Dodge, miles from the location of the

defendant's arrest, and "no drugs were found in the trunk of the Dodge, [but] other items connected with the conspiracy were, including [ ] drug ledgers," and car was connected to an earlier drug-buying trip); United States v. Hernandez-Mejia, 2008 WL 5968897, at *9-11.

## ANALYSIS

Gonzalez, Sr. objects to the inclusion of a 2-level enhancement in his offense level under U.S.S.G. § 2D1.1(b)(1), based on possession of a dangerous weapon during the commission of his drug-trafficking offense. The United States supports Gonzalez, Sr.'s position that the USPO incorrectly included the 2-level enhancement. The Court concludes that, based on the record before it, the record supports, by a preponderance of the record, that the 2-level enhancement of § 2D1.1(b)(1) applies and that Gonzalez, Sr. has not shown that it is "clearly improbable" that the Taser was used in connection with the underlying offense.

### I.     THE TASER IS A "DANGEROUS WEAPON" UNDER § 2D1.1(b)(1).[3]

Section 2D1.1(b)(1) calls for a 2-level increase in offense level "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Application note 11(A) explains that "dangerous weapon" is defined according to § 1B1.1, which states that a dangerous weapon is "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, application note 1(d). In the Addendum to the Presentence Report, the USPO asserts that "[a] taser is a dangerous weapon capable of causing serious bodily injury[.]" Addendum to the

---

[3]On a clean slate, the Court would not find that a Taser is a dangerous weapon. It is not designed to kill or to inflict serious physical injury. The Court, from this record, does not know why Gonzalez, Sr. had the Taser, but it may have been precisely to protect him without being tempted to shoot someone with a gun. He knew that he was moving a large amount of drugs, and rather than shooting a policeman, he may have thought he could stun him and get away. Criminals often have odd thinking. In any case, the Court concludes that the Tenth Circuit has decided that a Taser is a dangerous weapon, and the Court, as a district court, is not free to disregard that ruling just because it might come out the other way.

Presentence Report at 3, filed April 28, 2016 (Doc. 862)("Addendum").  While the Court has found no federal case addressing whether a Taser is a "dangerous weapon" within § 2D1.1(b)(1)'s meaning, in United States v. Quiver, 805 F.3d 1269 (10th Cir. 2015), the Tenth Circuit recently held that a Taser qualifies as a "dangerous weapon" for a 4-level enhancement under U.S.S.G. § 2A2.2(b)(2).  805 F.3d at 1272.  Section 2A2.2(b)(2) states that, "if a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels."  U.S.S.G. § 2A2.2(b)(2).  Further, like § 2D1.1(b)(1), application note 1 to § 2A2.2(b)(2) states that "dangerous weapon" "has the meaning given that term in §2B1.1, Application Note 1."  U.S.S.G. § 2A2.2(b)(2), application note 1.  The Tenth Circuit in United States v. Quiver held:

> We conclude that a Taser -- even in drive-stun mode -- is a dangerous weapon.  In either drive-stun or probe mode, a Taser is "capable of inflicting . . . serious bodily injury," which is defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requirement medical intervention such as surgery, hospitalization, or physical rehabilitation."

805 F.3d at 1272 (quoting U.S.S.G. § 1B1.1 cmt. n.1(D), (L)).

The guideline provision at issue in this case -- § 2D1.1(b)(1) -- states: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."  U.S.S.G. § 2D1.1(b)(1).  Both § 2D1.1(b)(1) and § 2A2.2(b)(2) -- which the Tenth Circuit addressed in United States v. Quiver -- point to the same definition of "dangerous weapon," set forth in § 1B1.1, which states that a dangerous weapon is "an instrument capable of inflicting death or serious bodily injury."  U.S.S.G. § 1B1.1, application note 1(d).  The Court is therefore persuaded that the Tenth Circuit's holding in United States v. Quiver that a Taser is a "dangerous weapon" is applicable in this case.  Accordingly, the Court concludes that a Taser is a "dangerous weapon" within § 2D1.1(b)(1)'s meaning.

## II. THE RECORD SHOWS THAT APPLICATION OF THE 2-LEVEL ENHANCEMENT UNDER § 2d1.1(b)(1) IS JUSTIFIED.

Because the Court has concluded that a Taser is a "dangerous weapon" within § 2D1.1(b)(1)'s meaning, the issue is whether Gonzalez, Sr. "possessed" the Taser.  In the Tenth Circuit, the 2-level enhancement applies where "[t]he government . . . show[s] by a preponderance of the evidence that 'a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. . . ." United States v. Sallis, 533 F.3d at 1225.  In other words, "the government need only show the weapon was found in the same location where drugs or drug paraphernalia are stored or in the general vicinity of where part of the drug activity occurred."  United States v. McClure, 358 F. App'x at 10.  See United States v. Beltran, 571 F.3d at 1021; United States v. Hall, 473 F.3d at 1321; United States v. Zavalza-Rodriguez, 379 F.3d at 1186-87; United States v. Humphrey, 208 F.3d at 1211; United States v. Florez, 149 F.3d at 1280; United States v. Hernandez-Mejia, 2008 WL 5978897, at *6-7.  Once the United States makes that showing, "the burden shifts to the defendant, who must demonstrate that this connection is clearly improbable."  United States v. Sallis, 533 F.3d at 1225 (quotation omitted).

While, in this case, the United States does not support application of this enhancement, the Court concludes the evidence in the record meets the legal standard for application of the 2-level enhancement under § 2D1.1(b)(1).  The Addendum notes that "[t]he investigative reports reflect the taser was located in the defendant's vehicle and the drugs were located in a trailer attached to his vehicle."  Addendum at 3.  The Tenth Circuit has held that the United States "need only show the dangerous weapon was located in the general vicinity of where part of the drug activity occurred," and the Court concludes that this standard is met here.  See United States v. Seanez, 221 F. App'x 773, 777 (10th Cir. 2007)(holding that an enhancement under §

2D1.1(b)(1) applied where both the gun and drugs were accessible inside the defendant's residence). Because Gonzalez, Sr.'s crime was conspiracy to distribute controlled substances, it is sufficient that both Gonzalez, Sr. and the Taser were "found in the same location where drugs or drug paraphernalia are stored," and "in the general vicinity of where part of the drug activity occurred." States v. McClure, 358 F. App'x at 10.

Gonzalez, Sr.'s principal defense to the enhancement is that he had no idea that the Taser was in the vehicle he was driving. See Tr. at 10:9-10 (Darnell)("He was simply not aware that a Taser was there, if it was there."). In United States v. McClure, a panel of the Tenth Circuit upheld application of the 2-level enhancement in the face of the defendant's assertion that she had no knowledge of the gun. See 358 F. App'x at 8 ("As to the firearm enhancement, Ms. McClure asserted she had no knowledge of the rifle found by agents in her home or that her boyfriend . . . traded guns for weapons."). First, while the United States did not argue that the enhancement should apply, even it conceded that Gonzalez, Sr. knew that the Taser was in the vehicle. See Tr. at 11:21-13:20 (Court, Swainston). At the hearing, the Court and the United States had the following exchange:

> MR. SWAINSTON: . . . Setting that aside, though, if it's true that the defendant hadn't, had no knowledge of it, and I think the Court knows that I'm somewhat suspicious of that argument, but I.
>
> THE COURT: And why are you suspicious.
>
> MR. SWAINSTON: One, because I think Your Honor might recall that there was a lot of evidence during the suppression hearing about surveillance that was conducted on the defendant driving that truck all the way down to El Paso over a period of days. So it doesn't jump out as credible to me necessarily. It's also his vehicle or was his vehicle. But that said, I could not say under any definition of a dangerous weapon used or possessed towards the advancement of a drug trafficking conspiracy that this Taser had anything to do with that. My understanding of drug trafficking cartels and this one in particular, is they don't bother with the little things like Tasers, these organizations and this particular

> organization was well known, Your Honor you might remember the 40 firearm reversal. We came close to, had it not been us selling the firearms to one of the southern parts of this case, one of the southern coconspirators in this case who wasn't charged in the particular indictment but was in a separate indictment case that you also handled, they ordered up 20 long guns, and several fully automatic AK-47s and some handguns. They didn't order Tasers, so it's not part of the culture. When they want to act in a violent way in support of their drug trafficking activities it's not something that I have ever seen come up as a potential weapon in furtherance of a drug trafficking enterprise.
>
> THE COURT: So you think that it's likely that this was something that Mr. Gonzalez, Sr, had not that it was supplied or put there by the cartel.
>
> MR. SWAINSTON: I think that's probably right. But I can also say that I don't see how this Taser was or would be used as part of the drug trafficking conspiracy. . . .

Tr. at 11:21-13:20 (Court, Swainston). The Court agrees with the United States that the evidence supports a factual finding that Gonzalez, Sr. knew the Taser was in the vehicle. Second, in United States v. Chatman, the Tenth Circuit panel found it was sufficient that the United States

> presented evidence showing the firearms and ammunition were located in Ms. McClure's and [her boyfriend's] residence and vehicles at the same time and place as the discovery of large amounts of methamphetamine and other drug paraphernalia, making it clear the entire residence, as well as the vehicles, constituted the locus of the drug trafficking operation.

358 F. App'x at 10-11. The panel then found that McClure's argument that she had no knowledge of the gun did not counter the imposition of the enhancement; rather, she could be charged with knowledge of the weapon because it was foreseeable that her boyfriend would have possessed a firearm in conjunction with their drug conspiracy. See 358 F. App'x at 11.

While, in this case, there is no co-conspirator from whom to impute knowledge of the weapon, the Tenth Circuit's case law does not mandate that the United States prove the defendant knew the weapon was present. "Possession in the context of § 2D1.1(b)(1) is . . . possession by proximity-constructive possession." United States v. Zavalza-Rodriguez, 379 F.3d

at 1187.  In United States v. Chatman, 994 F.2d 1510 (10th Cir. 1993), the defendant appealed the district court's application of a 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1).  The facts of United States v. Chatman were somewhat more favorable to the defendant than the facts in this case are to Gonzalez, Sr.: the police found the weapon inside a dresser in a bedroom of the apartment at which the defendant negotiated a drug sale and was later arrested.  See 994 F.2d at 1517.  The defendant argued "that possession under § 2D1.1(b)(1) requires a showing that the gun was on [the defendant's] person or within his immediate reach and that he knew the gun was there" -- almost exactly what Gonzalez, Sr. argues in this case.  994 F.2d at 1517.  The Tenth disagreed, stating:

> Our prior rulings construing § 2D 1.1(b)(1) and its commentary do not support this interpretation.  We have held that possession under § 2D1.1(b)(1) does not require a finding of scienter, see United States v. Underwood, 938 F.2d 1086, 1090 (10th Cir. 1991), and that the trial judge may "enhance a drug defendant's sentence for mere possession of a dangerous weapon even if there is no evidence other than proximity to suggest the gun was connected to the offense."  United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992)(guns seized from kitchen and master bedroom were in adequate proximity).

994 F.2d at 1517.  Like the defendant in United States v. Chatman, Gonzalez, Sr.'s primary defense is that he did not know that the Taser was nearby.  And, as it was in Chatman's case, Gonzalez, Sr.'s protestations do not show that it was "clearly improbable" that the Taser was connected to the offense.  994 F.2d at 1517-18 ("We conclude that the government has met its burden of proving by a preponderance of the evidence that the gun was proximate to the offense, and that Chatman has presented no evidence that it is 'clearly improbable' that the gun was connected to the offense.").

Before 1989, U.S.S.G. § 1B1.3, which defines "conduct that is relevant to determining the applicable guideline range," included a proviso -- applicable to § 2D1.1(b)(1) -- which

specified that conduct could justify an adjustment only "if the harm or risk was caused intentionally, recklessly or by criminal negligence." United States v. Underwood, 938 F.2d 1086, 1089 (10th Cir. 1991). The 1989 amendment removed that subsection. See United States v. Underwood, 938 F.2d at 1089-90. The Tenth Circuit has held that this change removed the requirement that the defendant know that the weapon was present to justify imposition of the enhancement. See United States v. Underwood, 938 F.2d at 1089-90 (discussing the defendant's argument that "the government did not prove by a preponderance of the evidence that he knew of . . . the weapon" and stating that "[u]nder the new guideline it is clear that scienter is not required; simple possession alone will suffice for a firearm enhancement."). Commentators agree with that analysis. See R. Haines, Jr., F. Bowman, III, & J. Woll, Federal Sentencing Guidelines Handbook § 2D1.1, at 562 (West 2009-2010)("A previous version of the relevant conduct guideline . . . required that defendant be aware of his possession of the weapon, or criminally negligent in not being aware of his possession, but that version was replaced by the 1989 amendments."). It is thus proximity, and not knowledge, that the record must show.

Moreover, the Tenth Circuit has stated that the defendant's burden to avoid the sentencing enhancement -- once the record shows the necessary nexus between the weapon and the offense -- is more onerous than a preponderance-of-the-evidence standard. The Tenth Circuit stated that "the burdens of proof remain different under" § 5C1.2 -- the safety-valve provision -- and § 2D1.1(b)(1). United States v. Zavalza-Rodriguez, 379 F.3d at 1187. "A defendant . . . need only demonstrate by a preponderance of the evidence eligibility for the safety valve, whereas the defendant must show that it is *clearly improbable* that a gun was not used in connection with the offense to avoid the § 2D1.1 sentence enhancement." United States v. Zavalza-Rodriguez, 379 F.3d at 1187 (emphasis added). The Court finds that Gonzalez, Sr.'s

uncorroborated statement, through counsel, that he did not know that the Taser was in the back seat of the vehicle he was driving does not make it "clearly improbable" that the Taser was used in connection with the offense to which he pled guilty.  United States v. Chatman, 994 F.2d at 1517-18.

    **IT IS ORDERED** that the objection to the application of a 2-level enhancement under U.S.S.G. § 2D1.1(b)(1) raised in Defendant Ramon Gonzalez, Sr.'s Objections to Presentence Investigation Report, filed April 16, 2016 (Doc. 860), is overruled.

                                              _____
                                              UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
   United States Attorney
Reeve L. Swainston
Cynthia Weisman
Stephen R. Kotz
Samuel A. Hurtado
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

James O. "Jim" Darnell
James "Jeep" Darnell
Jim Darnell, P.C.
El Paso, Texas

    *Attorneys for the Defendant*